**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 15 2013, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SHAWNA D. WEBSTER**
Webster & Webster, LLC
Vincennes, Indiana

ATTORNEYS FOR APPELLEE:

**GARA U. LEE**
Vincennes, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION ) 
OF THE PARENT-CHILD RELATIONSHIP OF: ) 
) 
Tr.C., Te.C., and K.C. (Minor Children) ) 
) 
N.C. aka N.J. (Father), ) 
) 
    Appellant-Respondent, ) 
) 
       vs. )    No. 42A04-1205-JT-273 
) 
THE INDIANA DEPARTMENT OF ) 
CHILD SERVICES, ) 
) 
    Appellee-Petitioner. ) 

APPEAL FROM THE KNOX SUPERIOR COURT
The Honorable w. Timothy Crowley, Judge
Cause No. 42D01-1106-JT-021; 42D01-1106-JT-022; 42D01-1106-JT-023

**January 15, 2013**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Respondent, N.C. a.k.a N.J. (Father), appeals the trial court's termination of his parental rights to his minor children, K.C., Tr.C., and Te.C.

We affirm.

ISSUES

Father raises two issues on appeal, which we restate as:

(1) Whether Father's due process rights were violated during the underlying Children in Need of Services (CHINS) procedure; and

(2) Whether the State proved by clear and convincing evidence that the children were removed from Father's care for a period of six months as required by Ind. Code § 31-35-2-4(b)(2)(A)(i).

FACTS AND PROCEDURAL HISTORY

J.C. (Mother)[1] and Father are the parents of K.C., born April 22, 2000, Tr.C., born November 22, 2001, and Te.C., born November 28, 2003. On June 27, 2010, the Daviess County Department of Child Services (DCS) received a report that Mother was using methamphetamines in the presence of the children. DCS removed the children from Mother's care. Upon removing the children, DCS contacted Father who requested that

---

[1] Mother voluntarily terminated her parental rights to the minor children and is not part of this appeal. Therefore, we will provide facts as to Mother only as necessary to address Father's arguments.

the children be placed with their maternal grandmother as he did not have transportation to pick them up. On June 29, 2010, DCS filed a separate, verified CHINS petition for each child. That same day, the trial court conducted an initial hearing where Mother admitted the allegations in the CHINS petitions and the trial court adjudicated the minor children to be CHINS. Father did not appear at the hearing. On July 19, 2010, DCS filed a motion to transfer jurisdiction to Knox County because the "children and the [M]other currently reside in Knox County." (Appellant's App. p. 37).

On August 20, 2010, the trial court held a dispositional hearing at which Mother appeared. The court ordered the parents to participate in services and assigned the existing child support order against Father to the DCS. During the proceedings, Father communicated "off and on" with Mother. (Transcript p. 224). Although Father realized that the children had become CHINS, he considered it Mother's responsibility to get the children back because "she was the one that had lost [the] kids[.]" (Tr. p. 224). On October 10, 2010, when DCS's service providers encountered Father at Mother's residence while picking Mother up for services, they informed him on the status of the proceedings, gave him a copy of "the DCS papers," and offered to include Father in the services. (Tr. p. 99). Father rejected the offer, and "was very disrespectful and under the influence." (Tr. p. 100).

On December 20, 2010, the trial court conducted a hearing at which Father appeared. During this hearing, Father was served with all of the prior CHINS documents. On June 10, 2011, DCS filed three separate petitions—one for each minor child—

3

for the termination of the parent-child relationship. On January 12, February 1, and March 13, 2012, the trial court conducted an evidentiary hearing on DCS's petitions. On May 3, 2012, the trial court issued its Order terminating Father's parental rights to his three minor children, concluding, in pertinent part:

> 3. That it has been established by clear and convincing evidence that the allegations of the termination petition are true in that there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for the child's placement outside the home will not be remedied.
> * * *
> The [Father] has a significant criminal history. The [Father] was absent from the family and failed to provide for the family prior to the initiation of the CHINS proceedings. The [Father] failed to significantly comply with this [c]ourt's dispositional orders until he entered the Wabash Valley Regional Community Corrections Male Work Release Program. During the time that the [Father] benefited from the structure of the Male Work Release Program, he made significant improvements. Upon his discharge from Work release in October, 2011, however, the [Father's] progress toward reunification ceased.
>
> The evidence at the termination fact-finding hearings demonstrated that the [Father] failed to maintain employment, failed to consistently visit with his children, and failed to obtain and maintain permanent housing. The [Father] failed to submit to drug screens as requested, failed to follow through with drug and alcohol treatment, and tested positive for methamphetamine and marijuana during the pendency of the CHINS proceedings. The [Father] also failed to meet with service providers as ordered by the [c]ourt. Finally, the [Father] was re-arrested for new felony criminal charges during the pendency of these termination proceedings, and at the time of the hearing on March 13, 2012, the [Father] was incarcerated in the Knox County Jail[.]
>
> 4. That it has been established by clear and convincing evidence that the allegations of the termination petition are true in that the termination of the parent-child relationship is in the best interests of [the minor children.]
> . . . The [Father's] continuing criminal and drug issues, his present incarceration on serious felony charges, and his failure to make necessary lifestyle changes to properly parent his child[ren] preclude the possibility of reunification.

4

(Appellant's App. pp. 11-12; 15-16; 19-20).

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Due Process*

Father contends that the trial court's decision to terminate his parental rights should be reversed because of perceived procedural irregularities in the underlying CHINS proceedings. Specifically, he complains that the trial court violated his due process rights by (1) transferring venue of the case to Knox County; (2) failing to notify him of the CHINS petition and dispositional hearing date; and (3) failing to hold a dispositional hearing within the statutorily required period. Father claims that those irregularities deprived him of the due process guaranteed by the United States Constitution and renders the termination decision void. The DCS responds that Father waived his challenge because he failed to object to the alleged errors during the CHINS proceeding and did not raise his due process claim to the trial court at the termination stage.

The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. CONST. Amend. XIV. As we explained in *A.P. v. Porter County Office of Family & Children*, 734 N.E. 2d 1107, 1112 (Ind. Ct. App. 2000), *trans. denied*:

> The involuntary termination of parental rights is an extreme measure that is designed to be used only as a last resort when all other reasonable efforts have failed. Choices about marriage, family life, and the upbringing of children are among associational rights the United States Supreme Court

has ranked as of basic importance in our society and are rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect. A case involving the State's authority to permanently sever a parent-child bond demands the close consideration the Supreme Court has long required when a family association so undeniably important is at stake.

Accordingly, a parent's right to raise one's children is protected by the due process clause. *See In re A.H.*, 751 N.E.2d 690, 701 (Ind. Ct. App. 2001), *trans. denied* (addressing due process claim on appeal from CHINS disposition).

It is well established that a party on appeal may waive a constitutional claim. *McBride v. Monroe County Officer of Family and Children*, 798 N.E.2d 185 (Ind. Ct. App. 2003). Here, Father did not object to any of the alleged deficiencies in the CHINS proceedings, nor did he argue during the termination proceedings that those alleged deficiencies constituted a due process violation. Rather, he raised his due process claims for the first time on appeal. We therefore agree with the DCS that Father has waived his constitutional challenge.

## II. *Termination Proceedings*

Next, Father contends that the DCS failed to establish by clear and convincing evidence that the minor children have been removed from his custody for at least six months as required by statute.

The trial court here entered findings of fact and conclusions of law in terminating Father's parental rights to his minor children. Our standard of review is therefore two-tiered. *Id.* We first determine whether the evidence supports the findings, and second, whether the findings support the trial court's legal conclusions. *Id.* In deference to the

6

trial court's unique position to assess the evidence, we set aside the trial court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the trial court's legal conclusions are not supported by its findings of fact or do not support the judgment. *Id*. Furthermore, we do not reweigh the evidence nor assess the credibility of the witnesses when reviewing termination proceedings on appeal. *In re J.H.*, 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), *trans. denied*. Instead, we consider only the evidence supporting the trial court's decision and reasonable inferences drawn therefrom. *Id*.

The involuntary termination of parental rights is an extreme measure that terminates all the rights of the parent to his or her child and is designed to be used only as a last resort when all other reasonable efforts have failed. *In re B.D.J.*, 728 N.E.2d 195, 199. The Fourteenth Amendment to the United States Constitution provides parents with the right to establish a home and raise their children. *Id*. However, the law allows for the termination of those rights when the parties are unable or unwilling to meet their responsibility as parents. *Id*. at 199-200. This policy balances the constitutional rights of the parents to the custody of their children with the State's limited authority to interfere with this right. *Id*. at 200. Because the ultimate purpose of the law is to protect the child, the parent-child relationship will give way when it is no longer in the child's interest to maintain this relationship. *Id*.

In order to terminate parental rights, DCS must file a petition alleging each of the four elements specified in Ind. Code § 31–35–2–4(b)(2)(A)-(D) and must prove each by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1262 (Ind. 2009). Clear and convincing requires that a fact's existence be "highly probable." *Hardy v. Hardy*, 910 N.E.2d 851, 859 (Ind. Ct. App. 2009). If the trial court finds that the allegations contained in the petition are true, it "shall terminate the parent-child relationship." I.C. § 31-35-2-8(a). Father now specifically challenges the trial court's determination under I.C. § 31-35-2-4(b)(2)(A)(i) which requires the DCS to proof by clear and convincing evidence that "[t]he child has been removed from the parent for at least six (6) months under a dispositional decree."

Removal under a dispositional decree refers to a dispositional decree that authorizes an out-of-home placement. *Tipton v. Marion County Dept. of Public Welfare*, 629 N.E.2d 1262, 1266 (Ind. Ct. App. 1994). When a child is removed from one parent and placed in foster care, the child is effectively removed from the custody of both parents. *Matter of K.H.*, 688 N.E.2d 1303, 1305 (Ind. Ct. App. 1997). Here, the minor children were removed from their Mother's care—the custodial parent—on June 27, 2010. Although Father was notified of the removal, he was unable to take custody and instead recommended placement of the minor children with the maternal grandmother. The DCS placed the children with the maternal grandmother and this out-of-the-home placement was approved and continued by the trial court during its dispositional hearing of August 20, 2010. The DCS commenced termination proceedings by filing its petition

on June 10, 2011. Thus, the minor children had been removed from their parents for more than six months prior to the filing of the termination of parental rights petitions. As such, the DCS met its statutory burden and the trial court properly terminated Father's parental rights to his minor children.

## CONCLUSION

Based on the foregoing, we hold that (1) Father waived his constitutional due process challenge and (2) the DCS established by clear and convincing evidence that the minor children had been removed for at least six months as required by statute.

Affirmed.

BAKER, J. and BARNES, J. concur