## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2020, 7:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna O. Holden
Zionsville, Indiana

ATTORNEYS FOR APPELLEE
THE INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika P. Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Mi.C. (Child Alleged to be in Need of Service) and Ma.C. (Mother);

Ma.C. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services and Child Advocates, Inc.,

*Appellees-Petitioners*

September 25, 2020

Court of Appeals Case No.
20A-JC-669

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Gael Deppert, Magistrate

Trial Court Cause No.
49D09-1908-JC-2012

**May, Judge.**

Ma.C. ("Mother") appeals the adjudication of her child, Mi.C. ("Child") as a Child in Need of Services ("CHINS"). She argues three of the trial court's findings are not supported by the evidence and that the remaining findings do not support the trial court's adjudication of Child as a CHINS. We affirm.

# Facts and Procedural History

Child was born on September 6, 2006, to Mother.[1] Child has three siblings: T.H., who is an adult; I.C., who is a minor;[2] and B., who is deceased. In early 2019, DCS received three reports that Mother, Child, and I.C. were homeless, Mother was abusing drugs, and Child and I.C. were not enrolled in school. The Department of Child Services ("DCS") was unable to locate the family to investigate the first two reports. On July 25, 2019, a DCS case manager located Mother in a mobile home. Mother answered the door, and the DCS case manager testified she recognized Mother based on pictures given to her by the Marion County Sheriff's Department. However, when the case manager identified herself as a DCS employee, Mother denied her identity and refused the DCS case manager entry to the mobile home.

---

[1] The CHINS order lists two alleged fathers for Child. Neither participates in this appeal.

[2] I.C. was also part of the CHINS proceedings, but he ultimately was determined not to be CHINS because his father was able to provide care for him.

[3] DCS eventually located Child with T.H.; they both were living with T.H.'s father. DCS learned that T.H.'s father had been convicted of murder and told T.H. that he and Child could not live with T.H.'s father because Child could not live in a house where a resident had been convicted of murder. T.H. could not move and did not know where Mother was, so DCS removed Child from his care.

[4] On August 12, 2019, DCS filed a petition alleging Child was a CHINS. DCS alleged Child was a CHINS because the family was homeless after Mother's house burned down in May 2019; Child "did not feel safe in the care of [Mother;]" Child had "witnessed [Mother] holding a pipe and believed [Mother] to be using drugs[;]" and Mother's "whereabouts were unknown[.]" (App. Vol. II at 107.) DCS amended its petition on September 12, 2019, to include additional information and allegations regarding Child's alleged fathers.

[5] On December 2, 4, 5, 6, and 9, 2019, the trial court held fact-finding hearings on DCS's petition. At some point prior to these proceedings, Child was placed with T.H., who was no longer living with his father. Mother attended all fact-finding hearings. On January 23, 2020, the trial court entered its order adjudicating Child as a CHINS. On February 19, 2020, the trial court held its dispositional hearing and entered its dispositional decree and parental participation order the same day. The trial court ordered Mother to, among other things, complete a parenting assessment and follow all recommendations, submit to random drug and alcohol screens, participate in a substance abuse assessment and follow all recommendations, engage in family and home-based

therapy, provide DCS with a release of information from her current therapist, and follow recommendations of service providers.

# Discussion and Decision

Mother challenges Child's adjudication as a CHINS. Because a CHINS proceeding is a civil action, DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). The CHINS petition was filed pursuant to Ind. Code § 31-34-1-1, which states:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
>> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>>
>> (2) the child needs care, treatment, or rehabilitation that:
>>
>>> (A) the child is not receiving; and
>>>
>>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Under Indiana Code section 31-34-1-2, DCS must prove that "the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian."

[7] A CHINS adjudication focuses on the needs and condition of the child, rather than the culpability of the parent. *In re N.E.*, 919 N.E.2d at 105. The purpose of a CHINS adjudication is not to punish the parent, but to provide proper services for the benefit of the child. *Id*. at 106. "[T]he acts or omissions of one parent can cause a condition that creates the need for court intervention." *Id*. at 105. "A CHINS adjudication can also come about through no wrongdoing on the part of either parent[.]" *Id*.

> While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that - a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent. Only when the State moves to terminate a particular parent's rights does an allegation of fault attach. We have previously made it clear that CHINS proceedings are "distinct from" involuntary termination proceedings. The termination of the parent-child relationship is not merely a continuing stage of the CHINS proceeding. In fact, a CHINS intervention in no way challenges the general competency of a parent to continue a relationship with the child.

*Id*. (citations omitted).

[8] When a trial court enters findings of fact and conclusions of law in a CHINS decision, we apply a two-tiered standard of review. *In re Des. B.*, 2 N.E.3d 828,

836 (Ind. Ct. App. 2014). We first consider whether the evidence supports the findings and then whether the findings support the judgment. *Id*. We may not set aside the findings or judgment unless they are clearly erroneous. *Id*. Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id*. We give due regard to the trial court's ability to assess witness credibility and do not reweigh the evidence; we instead consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id*. We defer substantially to findings of fact, but not to conclusions of law. *Id*. Unchallenged findings "must be accepted as correct." *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1991).

## 1. Challenged Findings

[9] Mother argues three of the trial court's seventy-five findings are not supported by the evidence. First, she challenges Finding 16, which states: "Prior to DCS involvement, [Mother] had not enrolled [Child] in school and had not provided her temporary caregiver the authority to do so, causing him to seek legal counsel for guardianship proceedings." (App. Vol. III at 64.) Mother contends this finding is not supported by the evidence because she presented documentary evidence that Child was enrolled in Brown County Junior High School on August 7, 2019.

[10] While Mother's documentary evidence indicated Child was enrolled in school on August 7, 2019, it also shows that she was withdrawn on August 26, 2019. During the first fact-finding hearing, Child testified that T.H., with whom she was living at that time, had enrolled her in Franklin Township Middle School East with the assistance of DCS. Mother testified that Child had not been enrolled in school prior to that time and that she intended to enroll Child in school in Putnam County, where Mother intended to live with Child's paternal grandparents. Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re Des. B.*, 2 N.E.3d at 836 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

[11] Mother next challenges Finding 32, which states: "Court has no valid prescription(s) supporting refutation by [Mother] and her parents." (App. Vol. III at 65.) In the trial court's order, it noted ten drug screens Mother completed, seven of which were positive for hydrocodone or hydromorphone, or a combination of the two. The family case manager testified that she observed medication bottles with "[Mother's] information on [them]" and that one of the bottles contained hydrocodone. (Tr. Vol. II at 99.) However, Mother did not submit valid prescriptions to the court as evidence. Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re Des. B.*, 2 N.E.3d at 836 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

[12] Finally, Mother contends Finding 75 is not supported by the evidence. It states: "Court finds Mother does not have a stable residence for [Child] at the time of the fact-finding." (App. Vol. III at 69.) Mother argues that while she moved from place to place because she was "assisting friends and family when she stayed with them," "[t]here was no evidence that Mother expected [Child] to move around with her if [Child] were in her care." (Br. of Appellant at 26.) At various times prior to the fact-finding hearings, Mother lived with her grandparents in Putnam County, her great aunt in Marion County, and various other family members and friends. Mother's argument that such a chaotic living situation is stable is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re Des. B.*, 2 N.E.3d at 836 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

## 2. Trial Court's Conclusions

[13] Mother challenges the trial court's conclusions of law supporting its adjudication. We determine whether the findings are sufficient to support the judgment. *In re A.H.,* 751 N.E.2d 690, 695 (Ind. Ct. App. 2001), *trans. denied*. Mother asserts the trial court's findings "focus largely on stale information about Mother's past struggles and do not support the conclusion that she required the coercive intervention of the juvenile court." (Br. of Appellant at 28.) In adjudicating Child a CHINS, the trial court found the house where Mother lived with Child burned down on May 31, 2019. After that, Child lived with T.H. and did not see Mother from May 31, 2019, to August 12, 2019.

[14] During that time, Mother did not communicate with Child and "didn[']t bring clothes," so T.H. "was providing for her." (App. Vol. III at 64.) Family members testified that prior to the fire, they were unable to locate Mother, and Child would stay with various family members. The trial court found that Child testified that "she saw a pipe in her [Mother's] home, but never confronted [Mother] about it." (*Id*.)

[15] The family went through a significant amount of trauma in a short time. Child's sibling, B., committed suicide in December 2018, and the family's house burned down in May 2019. Despite this trauma, Mother had not enrolled Child in therapy, and service providers presented evidence that Mother had "made no progress in treatment . . . of her diagnosed mental health issues." (*Id*. at 67.) The trial court found Mother testified that "she is taking medications to help with depression and bipolar diagnoses, but [Mother] did not provide any evidence to support her testimony." (*Id*.)

[16] At the recommendation of Child's therapist, Mother had not been granted supervised visitation with Child since August 12, 2019, and had only seen Child during court hearings. The trial court found "[Child] remains upset about the house . . . burning to the ground, and that [Child] remains really angry with [Mother] and hates [Mother] because of pictures of [B.] that [Child] had and which Court infers [Child] blames [Mother] for being lost in the fire." (*Id*. at 67.) Further, the trial court noted testimony from Child's therapist and the Guardian ad litem, who believed "an immediate return to Mother[']s care would be detrimental to [Child]" and "[Child] is still reluctant to discuss past

trauma in therapy sessions and has not had been able to process past trauma and her feelings, yet." (*Id*. at 68.) Finally, the trial court noted "a recent incident when . . . [Child] ran away. Court infers that [Child] may be a flight risk when unhappy with her life." (*Id*. at 69.)

[17] As Mother does not have stable housing for herself or Child, did not get therapy for Child following a series of traumatic incidents, has a history of substance abuse and mental illness, and is not currently permitted to visit with Child, we cannot say the trial court's adjudication of Child as a CHINS was clear error. *Contra Matter of E.K.*, 83 N.E.3d 1256, 1262 (Ind. Ct. App. 2017) (reversing CHINS adjudication because DCS did not prove coercive intervention of the court was necessary when parents had made great strides in addressing the issues that resulted in CHINS investigation, retained custody of their children, and were actively participating in treatment), *trans. denied*.

# Conclusion

[18] The trial court's findings challenged by Mother were supported by the evidence. Further, the trial court's findings supported its conclusion that Child was a CHINS. Accordingly, we affirm.

[19] Affirmed.

Riley, J., and Altice, J., concur.