793 N.E.2d 1191 (2003)
In the Matter of K.B., A Child Alleged to be a Child in Need of Services.
No. 46A03-0301-JV-35.
Court of Appeals of Indiana.
August 26, 2003.
*1194 Alan J. Sirinek, Friedman & Associates, P.C., LaPorte, IN, for Appellant.
Donald W. Pagos, Sweeney, Dabagia, Thorne, Janes, & Pagos, L.L.P., Michigan City, IN, for Appellee.
Kimberly C. Metzger, Madison Center, Inc., South Bend, IN, for Amicus Curiae. *1192

*1193 OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellant-Petitioner, LaPorte County Office of Family and Children (LPOFC) appeals the juvenile court's dispositional order confirming K.B.'s status as a child in need of services (CHINS) and making K.B. a ward of LPOFC for placement in residential care.
Affirmed.[1]

ISSUES
LPOFC raises two issues on appeal, which we restate as follows:
1. Whether the juvenile court possessed subject matter jurisdiction;
2. Whether LPOFC's July 8, 2002 Motion to Dismiss affected the juvenile court's jurisdiction; and
3. Whether the juvenile court erred in making a CHINS adjudication and entering a dispositional order in this case?

FACTS AND PROCEDURAL HISTORY
Appellee-Respondent, Patricia Burgess (Mother), is the natural mother of K.B., a minor. On January 16, 2002, Mother admitted K.B., who was ten years old at the time, to the inpatient unit at Madison Center for Children (Madison Center) due to K.B.'s severe aggression toward family members, destruction of property, fire-setting, running away and truancy. On approximately February 14, 2002, K.B. was deemed psychiatrically stable and ready for discharge to a less restrictive, long-term residential treatment setting. This determination resulted in a Medicaid determination that inpatient care was no longer medically necessary. Consequently, further Medicaid inpatient funding was denied.
On February 22, 2002, February 27, 2002, March 8, 2002, and March 20, 2002, Mother refused to accept care, custody and supervision of K.B., and declined to pick K.B. up from Madison Center despite K.B.'s discharge status. In the meantime, on March 18, 2002, Mother authored a letter explaining that she is unable to control K.B., and that she felt that K.B. "is not well enough to return home at this time." (Appellant's App. p. A-271). Mother further stated, "I am unable to give him the kind of supervision that I feel he must have," and that K.B. "should go to residential treatment as is recommended by Madison Center." (Appellant's App. p. A-271). This letter was forwarded to LPOFC by Madison Center.
On March 25, 2002, LPOFC filed a petition alleging that K.B. was a CHINS. The *1195 petition was based on Mother's letter and additional information obtained from Madison Center. On May 30, 2002, an initial hearing was held. At this hearing, Mother admitted to the allegations in the CHINS petition. Additionally at this hearing, LPOFC requested, and the juvenile court granted, a continuance in order to file an amended CHINS petition as well as a memorandum explaining LPOFC's position in the matter. Consequently, the juvenile court continued the matter until June 28, 2002.
By the June 28, 2002 hearing, LPOFC filed a memorandum and a motion to hold the proceedings in abeyance; however, LPOFC failed to file an amended CHINS petition. When the juvenile court inquired into the delay, LPOFC responded that it did not feel it had "sufficient means" to proceed with the existing CHINS petition. (Transcript p. 37). Also during the June 28, 2002 hearing, the juvenile court and the parties engaged in a lengthy and somewhat circular discussion revolving around LPOFC's position on the CHINS petition. Specifically, LPOFC suggested that it could not go forward with the existing petition and was inclined to withdraw the petition. The juvenile court responded that LPOFC's withdrawal of the petition could effectively end the case, because the juvenile court might be without authority, i.e. jurisdiction, to proceed. In response, Counsel for Madison Center warned that K.B. would not be safe at home, because Mother is unable to provide the necessary care and supervision. Counsel for Madison Center concluded that, if LPOFC withdrew the CHINS action and Mother came to Madison Center to take K.B. home, Madison Center would contact law enforcement or child protective services, which would place everyone back in juvenile court. Mother's counsel confirmed that Mother refused to take K.B. home. The June 28, 2002 hearing ended after LPOFC requested, and was granted, additional time in which to complete further investigation of K.B.'s status.
On July 2, 2002, Madison Center filed a motion to permit residential placement of K.B. without prejudice. The juvenile court granted the motion without hearing. Subsequently, on July 8, 2002, LPOFC filed a Motion to Dismiss the CHINS petition. LPOFC based its motion on the assertion that Mother and Madison Center entered into a "private agreement" permitting the child's admission into the residential program at Madison Center. (Appellant's App. p. A-169). LPOFC stated further that "any basis to believe that this child was in danger and/or the need for CHINS jurisdiction has been eradicated by the private agreement." (Appellant's App. p. A-169).
On July 18, 2002, the juvenile court issued its Orders on All Pending Motions and Petitions. In its order, the juvenile court denied LPOFC's July 18, 2002 Motion to Dismiss. The juvenile court addressed LPOFC's Motion to Dismiss in paragraphs 13 and 14, in pertinent part, as follows:
13. Madison Center's motion to permit placement does not indicate any "private agreement" between them and mother; only that Madison Center and mother take the necessary steps to admit the child for appropriate care at MCFC and that Madison Center may suspend fees due and collectible from parents. It should not be held against mother for attempting to secure the necessary care for the child while this matter is pending, and the [c]ourt specifically allowed Madison Center and/or [LPOFC] to secure said care for the child while these matters were pending.
14. Mother has admitted her inability to supply the child with necessary medical *1196 care, that she is financially unable to secure the necessary residential care. Only when the [c]ourt permitted Madison Center to suspend fees without prejudice to Madison Center's right to pursue compensation from the [LPOFC], parents or any other responsible party as determined in these proceedings, was the child able to receive the necessary care and treatment. Further, mother was unable to provide appropriate care for the child in her home.
(Appellant's App. pp. A-274-75). The juvenile court then determined that K.B. was a CHINS and set the matter for a dispositional hearing.
Thereafter, on December 31, 2002, the juvenile court entered its dispositional order in this case. LPOFC now appeals. Additional facts and procedural history will be supplied as necessary.

DISCUSSION AND DECISION
LPOFC asserts that the juvenile court erred when it entered its December 31, 2002 dispositional order with regard to K.B. Specifically, LPOFC maintains that the juvenile court erred as a matter of law when it denied LPOFC's Motion to Dismiss the CHINS petition. LPOFC argues that, because the juvenile court was required by law to grant the Motion to Dismiss, the juvenile court was without jurisdiction to enter the dispositional order.[2]

I. Jurisdiction of Juvenile Court

In order to properly address LPOFC's claim involving jurisdictional prerequisites, we must review the statutory procedure for the filing of CHINS petitions. A juvenile court has exclusive original jurisdiction in proceedings in which a child is alleged to be a CHINS under Indiana Code section 31-34. Ind.Code § 31-30-1-1(2) (emphasis added). A child is a CHINS if before the child becomes eighteen years of age:
(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that the child:
(A) is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
I.C. § 31-34-1-1.
The process of determining whether a child is a CHINS originates when a person gives a written information to an intake officer indicating that a child is a CHINS. If the intake officer has reasons to believe that the child is a CHINS, the intake officer is required to make a preliminary inquiry to determine whether the interests of the child mandate further actions. I.C. § 31-34-7-1. The preliminary inquiry is then forwarded to the prosecuting attorney along with a recommendation whether to: (1) file a petition, (2) informally adjust the case, (3) refer the child to another agency, or (4) dismiss the case. I.C. § 31-34-7-2. The person representing the interests of the state and receiving the preliminary inquiry and recommendations shall decide whether to request authorization from the juvenile court to file a petition. I.C. § 31-34-7-3. Indiana Code section 31-34-9-2 requires *1197 that the juvenile court shall authorize the filing of a CHINS petition if the juvenile court finds probable cause to believe that the child is a CHINS. A juvenile court does not acquire jurisdiction over a particular juvenile case where these jurisdictional prerequisites are completely ignored. In re Lemond, 274 Ind. 505, 533, 413 N.E.2d 228, 245 (Ind.1980).
In mid-March of 2002, Madison Center issued a report to LPOFC with regard to K.B., along with Mother's letter, prompting LPOFC to conduct a preliminary inquiry. See I.C. § 31-34-7-1 and -2. On March 25, 2002, LPOFC submitted the preliminary inquiry to the juvenile court. See I.C. § 31-34-7-3. Based on the preliminary inquiry report, the juvenile court found probable cause and granted LPOFC's request to file a petition alleging that K.B. was a CHINS. See I.C. § 31-34-9-2. LPOFC filed the petition the same date. See id. Therefore, because the subject proceedings comply with the jurisdictional prerequisites, the juvenile court has exclusive original jurisdiction. See I.C. § 31-30-1-1(2).

II. Motion to Dismiss

LPOFC asserts that the juvenile court was required by law to dismiss the case when LPOFC filed its Motion to Dismiss. In support of its contention, LPOFC cites to I.C. § 31-34-9-8, which provides: "Upon motion by the person representing the interests of the state, the juvenile court shall dismiss any petition the person has filed." (emphasis added). To properly address LPOFC's claim, we must first consider the meaning and ramifications of I.C. § 31-34-9-8.
When interpreting a statute, the foremost objective is to determine and effect legislative intent. In re the Visitation of J.P.H., 709 N.E.2d 44, 46 (Ind.Ct.App. 1999). Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. Id. The meaning and interpretation of the legislature are to be ascertained not only from the phraseology of the statute but also by considering its nature, design, and the consequences that flow from the reasonable alternative interpretations of the statute. Id. Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. Id.
In the instant case, LPOFC specifically contends that the juvenile court's failure to grant its Motion to Dismiss also constitutes a failure to comply with jurisdictional prerequisites. As a result, LPOFC maintains that the juvenile court is without jurisdiction to make any further rulings in this case.[3] Indiana Code section 31-34-9-8 is located in Chapter 9, which is entitled "Filing of Petition Alleging that Child is Child in Need of Services." Thus, the entire chapter concerns the process of filing the CHINS petition. The placement of section 8 in this chapter therefore indicates a legislative intent to limit the mandatory dismissal of CHINS petitions upon motion by the "person representing the interests of the state" to a time contemporaneous with that person's filing of the CHINS petition.
This interpretation of section 8 is further borne out in light of other statutory mandates that arise as a CHINS proceeding progresses. As Madison Center points out in its Amicus Curiae Appellate Brief, once a parent admits to the allegations contained in the CHINS petition, the juvenile *1198 court shall enter judgment accordingly and schedule a dispositional hearing. I.C. § 31-34-10-8; (Amicus Curiae Brief p. 10). If the mandate of section 8 is not confined in the procedural timeframe to the initial filing of the CHINS petition, the juvenile court would experience conflicting statutory mandates on how to proceed with a case such as the one at bar. As set forth above, we must construe the apparently conflicting statutes together to produce a harmonious statutory scheme and assume that the legislature did not intend conflicting mandates. See In re J.P.H., 709 N.E.2d at 46.
Therefore, we conclude that, given the specific set of facts in the case at hand, the ability of LPOFC to move the juvenile court for mandatory dismissal of the CHINS petition pursuant to I.C. § 31-34-9-8 ended upon Mother's admission to the allegations of the CHINS petition. Here, Mother admitted the allegations in the CHINS petition on May 30, 2002, whereas, LPOFC filed its first motion to dismiss on July 8, 2002. Consequently, any motions to dismiss filed subsequent to Mother's admission, i.e. both of LPOFC's motions to dismiss, are to be judged on the merits, as opposed to being automatically granted under I.C. § 31-34-9-8. That being said, we find that these issues are waived, as LPOFC fails to properly raise them on appeal.[4]
Waiver notwithstanding, LPOFC argues that its motion to dismiss the CHINS petition was based upon its determination that it could not establish the statutory prerequisites that K.B. was, in fact, a CHINS. LPOFC arrived at this determination subsequent to its supplemental inquiry into K.B.'s family, particularly Mother.[5] In support if its contention, LPOFC relies on In re Heaton, 503 N.E.2d 410, 414 (Ind.Ct.App.1986).
In Heaton, the juvenile court made a CHINS finding in the absence of a petition and this court reversed, finding the juvenile court without subject matter jurisdiction to enter a CHINS finding. LPOFC contends that its being unable to carry its burden of proving the facts alleged in the CHINS petition is akin to the failure to file a petition. Therefore, the jurisdictional prerequisites are likewise not met and the juvenile court is without subject matter jurisdiction.
We find the instant case distinguishable from In re Heaton. Here, LPOFC initiated the action when it found probable cause to request a CHINS petition from the juvenile court. The juvenile court, in turn, found probable cause to issue the petition. The petition was, in fact, issued. As discussed above, from that point, the juvenile court has exclusive original jurisdiction.[6]See I.C. § 31-30-1-1(2). *1199 Moreover, at the initial hearing, Mother admitted to the allegations in the CHINS petition. Upon admission, I.C. § 31-34-10-8 requires the juvenile court to enter judgment accordingly and to schedule a dispositional hearing. Consequently, the juvenile court properly denied LPOFC's motion to dismiss.

III. CHINS Adjudication and Entry of Dispositional Decree

Finally, LPOFC contends that the juvenile court erred in making a CHINS adjudication and entering a dispositional order in this case. Specifically, LPOFC argues that the juvenile court improperly based its finding that K.B. was a CHINS upon facts not alleged in the CHINS petition. Therefore, LPOFC asserts that the juvenile court committed reversible error.
In support of its contention, LPOFC relies on Maybaum v. Putnam County Office of Family & Children, 723 N.E.2d 951 (Ind.Ct.App.2000). In Maybaum, the juvenile court found that the State failed to carry its burden to establish that the child was a CHINS under the allegations in the petition. However, the juvenile court ultimately based its CHINS adjudication upon a statutory provision and set of facts not included in the petition. See Maybaum, 723 N.E.2d at 954. On appeal, the Maybaum court noted the statutory mandate that a CHINS petition contain a citation to the juvenile law defining a CHINS, along with a "concise statement of the facts upon which the allegations are based including the date and location at which the alleged facts occurred." Id. The Maybaum, court explained the importance of this process as follows:
[T]he CHINS petition is an integral part of ensuring that the parents have notice of the allegations and an opportunity to contradict the OFC's evidence. This is, in part, so because we have long recognized that parental rights have a constitutional dimension.
Id. Consequently, the Maybaum court reversed the juvenile court's ruling, holding that the parents could not have known that the OFC was proceeding under a different section of the CHINS statute and were therefore without notice to prepare a defense.
The instant case is distinguishable from Maybaum. Here, LPOFC filed a CHINS petition alleging that K.B. was a CHINS pursuant to I.C. § 31-34-1-1. In its petition, LPOFC set forth specific facts, in pertinent part, as follows:
a. That on or about January 16, 2002, the natural mother referred the child for admission to the Madison Center Hospital for not attending school, and other disruptive behaviors within the family home.
b. That the Madison Center has recommended that the child be placed in a residential treatment program, but that the child was also ready for discharge back to the care, custody and supervision of the natural mother with out-parent services.
c. That on February 22, 2002, February 27, 2002, March 8, 2002 and March 20, 2002, the natural mother was advised that the child was to be discharged from the Madison Center Hospital, but that the natural mother has refused to accept *1200 care, custody and supervision of the child.
d. That since the child has been admitted into Madison Center Hospital, the natural mother has been inconsistent in her contact with the child or cooperation with the treatment plan as prescribed by Madison Center.
e. That the natural mother has not cooperated with and is unwilling to participate in out-patient services as recommended for the child and the family by Madison Center.
(Appellant's App. pp. A-8-A-9).
Unlike Maybaum, Mother admitted to the allegations in the CHINS petition during the initial hearing on May 30, 2002. Pursuant to I.C. XX-XX-XX-X, if the parent admits to the allegations of the CHINS petition, the juvenile court shall enter judgment accordingly and schedule a dispositional hearing. (emphasis added). Accordingly, the juvenile court entered its order finding K.B. a CHINS on July 18, 2002, and scheduled the dispositional hearing for September 9, 2002.[7]
The juvenile court conducted hearings on September 9, 2002, October 8, 2002, and October 22, 2002. During the course of the hearings, Madison Center submitted a predispositional report to the juvenile court, and LPOFC declined to present evidence or further reports based on its belief that the juvenile court lacked jurisdiction to enter a dispositional decree.
On December 31, 2002, the juvenile court issued its dispositional decree with findings of fact and conclusions of law as required by I.C. § 31-34-19-10. The dispositional decree incorporated by reference the juvenile court's orders of July 18, 2002, October 8, 2002, October 17, 2002, and October 22, 2002. As stated above, LPOFC asserts that the juvenile court improperly based its finding that K.B. was a CHINS upon facts not alleged in the CHINS petition.
On appeal, we must determine whether the evidence supports the findings and second, whether the findings support the judgment. Hallberg v. Hendricks County Office of Family and Children, 662 N.E.2d 639, 644 (Ind.Ct.App.1996). The judgment will be reversed only when it is unsupported by the findings of fact and conclusions of law entered on those findings. Id.
Our review of the record reveals that the juvenile court's findings support its CHINS adjudication of K.B. and dispositional decree. In its July 18, 2002 Order, the juvenile court found K.B. to be a CHINS and denied LPOFC's Motion to Dismiss, in relevant part, as follows:
14. Mother has admitted her inability to supply the child with necessary medical care, that she is financially unable to secure the necessary residential care. Only when the [c]ourt permitted Madison Center to suspend fees without prejudice to Madison Center's right to pursue compensation from the [LPOFC], parents or any other responsible party as determined in these proceedings, was the child able to receive the necessary care and treatment. Further, mother was unable to provide appropriate care for the child in her home.
15. Court further refers to I.C. XX-XX-X-XX, which was enacted in 2001. It addresses situations such as presented here. That is, we have a child with an emotional, behavioral, and/or mental disorder who was voluntarily placed out of *1201 the home for the purpose of obtaining special treatment or care solely because the parent was unable to provide the care or treatment. Subsection (b) indicates the Office of Family & Children and the parent may execute a voluntary placement agreement. [LPOFC] elected not to enter a voluntary placement agreement, but rather filed the CHINS petition on the premise that mother was financially unable to provide the necessary care and treatment and was unable to take the child into her home, pursuant to I.C. XX-XX-X-X.
Wherefore, [c]ourt now denies the [LPOFC] motion for dismissal. Further, as no second opinion for recommended care has been filed as a basis for an amended petition or dismissal, nor has any amended petition been filed herein, the [c]ourt now finds as follows:
....
4. Based on the above, the child is found to be a Child in Need of Services as alleged in the petition and as defined by I.C. XX-XX-X-X. The child's mental condition is seriously impaired as a result of parents' financial inability to supply the child with necessary care and supervision and the child needs care and treatment that he was not receiving at the time of filing the petition and was only provided with same with the coercive intervention of the [c]ourt when the order was signed on July 2, 2002, permitting placement.
(Appellant's App. pp. A-274-75).
Further, in its October 8, 2002 Order ruling on LPOFC's August 8, 2002 Motion to Correct Error, the juvenile court made the following findings:
2. Mother, with counsel present, freely and voluntarily admitted to the allegations [in the CHINS petition] at the initial hearing on May 30, 2002:
A) She was/is unable to supply the child with necessary medical care of supervision, which seriously endangers his physical and mental condition.
B) She refused to accept care, custody, and supervision of the child.
C) She was/is unwilling to participate in outpatient services recommended for the child.
3. It was established that her "inability" stemmed mainly from her financial circumstances, although financial circumstances were not specified in the petition. Mother was unwilling and unable to return the child to her home and unwilling to participate in outpatient services if same were conditioned upon his returning to her home.
(Amicus' App. p. 6). We conclude that the juvenile court's findings are based on facts alleged in the CHINS petition and are further supported by the documentary evidence and oral representations received by the juvenile court in the course of the hearings in this matter. Accordingly, we find that the evidence is sufficient to support the juvenile court's CHINS adjudication of K.B. and the entry of its dispositional order. See Hallberg, 662 N.E.2d at 644.

CONCLUSION
Based on the foregoing, we find that the juvenile court properly assumed jurisdiction in this matter and remained unaffected by LPOFC's July 8, 2002 Motion to Dismiss. In addition, the juvenile court did not err in adjudicating K.B. as a CHINS and entering its dispositional order in this case.
Affirmed.
SHARPNACK, J., concurs.
BARNES, J., dissents with separate opinion.
*1202 BARNES, Judge, dissenting.
I respectfully dissent. I believe an important legal tenet is at stake here: who will decide what evidence and under what theory a juvenile court will hear and decide a CHINS petition? As a zealous guardian of the discretion of the party charged with going forward with the burden of proof, I emphatically come down on the side of the OFC under this set of facts.
The Office of Family and Children ("OFC") attorney attempted to amend or dismiss the petition in question before any admission was made by mother's attorney. See Tr. p. 6. It is clear to me that the OFC was wary of a possible arrangement between the service provider, Madison Center, and the child's family, specifically K.B.'s mother, because the "arrangement" would obligate LaPorte County to pay for the obviously extensive and in-depth services that were needed. This is a dispute in which the "principle" at stake translates into "who will pay?"
It is obvious from the transcript that Madison Center and K.B.'s mother reached an arrangement whereby the child's interests were to be served by a path of treatment exclusively administered by Madison Center. Certainly, there is no question that the child and family needed and deserved help. Just as certainly, I believe that the OFC attorney, as an officer of the court, was ethically compelled to advise the juvenile court he could not meet his burden of proof under Indiana Code Section 31-34-1-1, which was the statute cited to in the OFC's petition. Instead, the attorney for the OFC believed it more appropriate to proceed under Indiana Code Section 31-34-1-6[8] and asked the juvenile court for permission to either dismiss the petition or give time to amend it. See Tr. p. 6.
Mother's attorney, sensing that the earth was about to move from under his feet, quickly made an "admission" on behalf of the mother. One could fairly infer that this admission was made to keep the arrangement with Madison Center in tact. I do not believe that the OFC should or ought to be hamstrung in a situation like this.
I think it is important to note that the majority relies on Indiana Code Section 31-34-10-8[9] to conclude that the juvenile court properly considered mother's attorney's admission and entered judgment accordingly. Before the admission was made, however, the OFC attorney clearly indicated the OFC's intention to either amend the petition and proceed under Indiana Code Section 31-34-1-6 or dismiss the petition and, presumably, refile it under XX-XX-X-X. See Tr. p. 6. I emphasize this point because another code section specifically bars a parent from admitting the allegation in a CHINS petition when the petition is filed under Indiana Code Section 31-34-1-6. See I.C. § 31-34-10-6 ("Except if a petition is filed under IC XX-XX-X-X, the juvenile court shall determine whether a parent ... admits or denies the *1203 allegations of the petition...."). In other words, because Indiana Code Section 31-34-10-6 prohibits a parent from admitting allegations in a CHINS petition when the petition is filed under Indiana Code Section 31-34-1-6 and the OFC indicated its intention to proceed under that section, mother's attorney should not have been able to admit the allegations alleged in the petition.
Further, Indiana Code Section 31-34-9-8 provides: "Upon motion by the person representing the interests of the state, the juvenile court shall dismiss any petition has filed." (Emphasis added). I believe that this statute vests with the OFC the discretion to pursue CHINS proceedings in the manner it sees fit once a petition has been filed. Because the OFC represented the State's interests, filed the petition, requested the dismissal of the petition, and later filed a written motion to dismiss, it is my opinion that the juvenile court should have granted the OFC's motion to dismiss. See Ind.Code § 31-34-9-8.
Unlike the majority, I do not believe it is necessary to engage in statutory interpretation here because when a statute is clear and unambiguous on its face, as this statute is, we may not interpret it. See Conseco Finance Servicing Corp. v. Friendly Village of Indian Oaks, 774 N.E.2d 87, 93 (Ind.Ct.App.2002), trans. denied; Poehlman v. Feferman, 717 N.E.2d 578, 581 (Ind.1999) ("When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutory meaning leaves no room for judicial construction." (citation omitted)). In my opinion, Indiana Code Section 31-34-9-8 is clear and unambiguous on its face.I believe that in enacting Indiana Code Section 31-34-9-8, the legislature vested the OFC with the discretion to dismiss petitions to more effectively handle cases in which pursuing the petition is no longer in the child's bests interests and/or allow the OFC the flexibility to proceed under what it believes the evidence would prove. I think it is axiomatic that the party who has the burden of proof also has the ability to dismiss proceedings when it sees fit. See, e.g., Kibbey v. State, 733 N.E.2d 991, 996 (Ind.Ct.App.2000) (" `Whether to prosecute and what charges to file or bring ... are decisions that generally rest in the prosecutor's discretion.' " (citation omitted)); Ind. Trial R. 41(A) (providing for the dismissal of an action by a plaintiff). This basic principle should not be altered here simply because this case involves a CHINS proceeding. I acknowledge the desperate need for help for this child. However, I do not believe that discretion should be usurped from the OFC. In many instances, the juvenile court is not and should not be aware of the evidentiary difficulties, witness reluctance, ethical dilemmas, and various other considerations that ethically, legally, and practically compel dismissal or amendment of a charging instrument, in this case a CHINS petition.
NOTES
[1] Madison Center's May 21, 2003 Motion to Strike portions of Appellant's Reply Brief is hereby denied.
[2] At the outset, we note that, as the parties and the juvenile court discussed in the June 28, 2002 hearing, the particular facts and procedural history of this case give rise to a circular and somewhat maddening argument. Thus, in order to properly analyze LPOFC's generalized issue, we have divided it into three separate and distinct issues.
[3] We note that LPOFC filed two motions to dismiss prior to the entry of the juvenile court's dispositional order. Although LPOFC fails to specify to which motion to dismiss its argument applies, we find this immaterial due to our interpretation of I.C. § 31-34-9-8.
[4] LPOFC failed to preserve the issue of the juvenile court's denial of its July 8, 2002 Motion to Dismiss, when it failed to file a formal request with the juvenile court for a permissive interlocutory appeal pursuant to Ind. Appellate Rule 14(B). LPOFC likewise failed to present cogent argument with regard to the juvenile court's denial of its October 22, 2002 Motion to Dismiss, as required by App. R. 46(A)(8)(a). Consequently, we find the issue waived. See App. R. 46(A)(8)(a); Montgomery v. Trisler, 771 N.E.2d 1234, 1235 fn2 (Ind.Ct.App.2002); Hollowell v. State, 707 N.E.2d 1014, 1025 (Ind.Ct.App.1999) (observing that failure to present cogent argument constitutes waiver of issue for appellate review).
[5] We note that this inquiry took the form of a deposition. As there is no indication that the deposition was ever submitted to the juvenile court, we consider the deposition extraneous to the record on appeal.
[6] Jurisdiction is of three types: subject matter jurisdiction, personal jurisdiction and jurisdiction of the case. Pivarnik v. Northern Indiana Public Service Co., 636 N.E.2d 131, 137 (Ind.1994). Subject matter jurisdiction refers only to the power of a court to hear and decide a particular class of cases. Id. The only relevant inquiry in determining whether a court has subject matter jurisdiction is whether the kind of claim advanced by the petitioner falls within the general scope of authority conferred upon such court by the constitution or by statute. Id. Here, the juvenile court clearly has subject matter jurisdiction.
[7] Because we have already addressed the juvenile court's denial of LPOFC's Motion to Dismiss, for the sake of clarity, we will review the sufficiency of evidence issue without regard for the various Motions to Dismiss and Motions to Correct Error filed by LPOFC.
[8] Indiana Code Section 31-34-1-6 provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:
(1) the child substantially endangers the child's own health or the health of another individual; and
(2) the child needs care, treatment, or rehabilitation that the child:
(A) is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
[9] Indiana Code Section 31-34-10-8 provides; "If the parent, guardian, or custodian admits the allegations under section 6 of this chapter, the juvenile court shall do the following: (1) Enter judgment accordingly. (2) Schedule a dispositional hearing."