CITY OF GARY and Garnett Watson,
Appellants–Defendants,

v.

Walter MITCHELL, Louis Perunko,
and David Mosby, Appellees–
Plaintiffs.

No. 45A03–0504–CV–192.

Court of Appeals of Indiana.

March 10, 2006.

Darnail Lyles, Gary, for Appellants.

Ivan E. Bodensteiner, Douglas Ferngren Arnold & Busse, LLP, Valparaiso, for

Appellees Walter Mitchell and Louis Perunko.

Jennifer L. Ortiz, Blachly Tabor Bozik & Hartman, LLC, Valparaiso, for Appellee David Mosby.

## OPINION

CRONE, Judge.

### Case Summary

The City of Gary and Gary Police Chief Garnett Watson (collectively, "the City") appeal the trial court's granting of a preliminary injunction preventing their enforcement of the City's mandatory retirement policy against Walter Mitchell, Louis Perunko, and David Mosby (collectively, "Appellees"). We reverse.

### Issue

We restate the issue as whether the trial court abused its discretion by granting the motion for preliminary injunction filed by Appellees.[1]

### Facts and Procedural History

Appellees were Gary police officers. Mitchell was appointed in May 1970, Perunko in March 1964, and Mosby in March 1969. When the officers were appointed, Indiana Code Section 19–1–21–13, which applied to the Gary Police Department (the "Department"), stated that a police department member must retire on his sixty-fifth birthday. In 1982, the City adopted Ordinance 5881, which stated that each member of the Gary police department must retire upon his sixty-fifth birthday.[2] In late 2002 or early 2003, Mitchell,

---

1. In its statement of the case, the City states that in addition to the preliminary injunction, it is appealing the trial court's denial of its motion to dismiss. However, it fails to present a cogent argument or citation to authority on this issue, as required by Indiana Appellate Rule 46(A)(8)(a). Thus, its argument regarding the motion to dismiss is waived. *In re K.B.*, 793 N.E.2d 1191, 1202 n. 4 (Ind.Ct.App. 2003).

2. Indiana Code Chapter 19–1–21, repealed effective January 1, 1984, applied to "Police Departments in Cities of the Second Class of 125,000 or Over Located in Counties with Two Other Second-Class Cities." A revised police merit system, which includes a mandatory retirement age of seventy and applies to "each municipality or township that has a full-time paid police or fire department," is now codified at Indiana Code Chapter 36–8–3.5. Pursuant to Indiana Code Section 36–8–

Perunko, and Mosby learned that they were eligible to participate in a Deferred Retirement Option Plan ("the DROP"). The DROP is administered by the State of Indiana, and it provides Department employees with benefits in addition to their regular pensions. In early 2003, Appellees elected to participate in the DROP, and as part of their elections, they selected retirement dates beyond their sixty-fifth birthdays. Mitchell planned to retire on May 6, 2005, Perunko on August 1, 2005, and Mosby on January 5, 2006 ("the DROP retirement dates"). Corporal Melvin Franklin chose a DROP retirement date of January 5, 2004, and he worked until that date, which was more than one month following his sixty-fifth birthday. Sergeant Leon Hamilton chose a DROP retirement date of January 3, 2005, and he worked until that date, which was more than two months after his sixty-fifth birthday.

At a Police Civil Service Commission meeting in late 2003 or early 2004, a commissioner asked Chief Watson "what was the retirement age and what [were] the rules of the Gary Police Department in regards to retirement." Tr. at 67. Chief Watson looked into the issue and discovered that there was a mandatory retirement age of sixty-five. Sometime in 2004, he received a copy of a document entitled "Retirement List as of 3/9/04 for the Gary Police Department" (the "Retirement List"), which showed, *inter alia,* each officer's date of birth, DROP election date, planned retirement date, and DROP benefit amount. In his review of the Retirement List, Chief Watson noted that each of the Appellees had selected a DROP retirement date beyond his sixty-fifth birthday. In a letter dated December 13, 2004, Chief Watson informed each of the

Appellees that he was "technically retired" as of his sixty-fifth birthday, and that as of the date of the letter, he was "deemed retired" from the police department. Subsequently, this deadline was extended to December 31, 2004.

Each Appellee filed an appeal of Chief Watson's decision to the City of Gary Civil Service Commission ("CSC"). On December 27, 2004, counsel for CSC advised counsel for Mitchell and Perunko that CSC refused to consider these appeals because the matter was not within its jurisdiction. On December 29, 2004, Appellees filed in the trial court a complaint and request for temporary restraining order ("TRO"), through which they sought to enjoin the police department from retiring them before their DROP retirement dates. On December 30, 2004, the trial court held a hearing and issued a TRO against the City. On January 11, 2005, the City filed a motion to dismiss the complaint and dissolve the TRO. On February 2, 2005, Appellees filed a response. On February 3, 2005, Appellees filed an amended complaint, which included a request for preliminary injunction. On February 9, 2005, the trial court held a hearing on Appellants' motion to dismiss. On March 17, 2005, the trial court granted Appellees' request for preliminary injunction and denied Appellant's motion to dismiss. This appeal ensued.

## Discussion and Decision

### I. Standard of Review

The City contends that the trial court erred in granting Appellees' request for preliminary injunction. The issuance of a preliminary injunction is within the sound discretion of the trial court, and the scope of our review is limited to deciding

3.5–1, however, the City of Gary retained the merit system set forth in Indiana Code Chapter 19–1–21 by passing Ordinance 5881 prior to January 1, 1983, and by incorporating all

of the provisions of the prior statute, including the mandatory retirement age of sixty-five, in that ordinance.

whether there has been a clear abuse of discretion. *Barlow v. Sipes,* 744 N.E.2d 1, 5 (Ind.Ct.App.2001), *trans. denied.* When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Id.;* Ind. Trial Rule 52(A). We will reverse the trial court's judgment only when it is clearly erroneous. *Barlow,* 744 N.E.2d at 5. A judgment is clearly erroneous when it is unsupported by the findings and conclusions. *Avemco Ins. Co. v. State ex rel. McCarty,* 812 N.E.2d 108, 117 (Ind.Ct.App. 2004). "Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them." *Id.* We consider the evidence in the light most favorable to the judgment, and we construe findings together liberally in favor of the judgment. *Id.*

The trial court's discretion to grant or deny preliminary injunctive relief is measured by several factors: 1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of suc-

cess at trial by establishing a prima facie case; 3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and 4) whether, by the grant of the preliminary injunction, the public interest would be disserved. In order to grant a preliminary injunction, the moving party has the burden of showing, by a preponderance of the evidence, that the facts and circumstances entitle him to injunctive relief. The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor.

*Barlow,* 744 N.E.2d at 5 (citation omitted). If the movant fails to prove one or more of the four factors listed above, the trial court's grant of an injunction is an abuse of discretion. *Union Twp. Sch. Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 189 (Ind.Ct.App.1998), *trans. denied* (1999).[3]

## II. Reasonable Likelihood of Success

The trial court found that Appellees showed a reasonable likelihood of success on each of their claims: contract clause, due process, estoppel, and equal protec-

---

**3.** In its order, the trial court stated that Appellees were not required to show irreparable harm because they "allege[d] a deprivation of a constitutional right." Appellants' App. at 144. We have upheld such "per se" injunctions in cases of conduct that is clearly unlawful. *See, e.g., Schrenker v. Clifford,* 270 Ind. 525, 529, 387 N.E.2d 59, 61 (1979) (because the facts showed that a valid Indiana statute was being violated, equity may enjoin such continued wrongful activity, and the nonexistence of provable damages does not prevent the granting of an injunction); *Union Twp. Sch. Corp.,* 706 N.E.2d at 192 (defendants violated construction wage statute); *Kaminsky v. Med. Licensing Bd.,* 511 N.E.2d 492, 498 (Ind.Ct.App.1987) (injunction based on unauthorized practice of medicine). Here, the conduct of the City and Chief Watson with

regard to Appellees' employment contracts was not clearly unlawful. The trial court concluded that even though Appellees were not required to show irreparable harm, they were successful in doing so because in the absence of an injunction, Appellees would be stripped of their badges and weapons, and thus, their identity. Also, the trial court found that in the time it would take to litigate this matter, even if Appellees prevailed, they would not be able to return to their positions on the police department because their DROP retirement dates would have passed. Because we find, below, that Appellees failed to demonstrate a reasonable likelihood of success on the merits of their claims, we need not reach a conclusion on the issue of irreparable harm.

tion. We disagree. We will review each claim in turn below.

■ First, Appellees argued that the City modified the terms of their employment agreements and then illegally discharged them in advance of their agreed retirement dates, in violation of the contract clauses of the Indiana and the United States Constitutions. These clauses prohibit the impairment of contractual obligations. U.S. CONST. art. 1, § 10; IND. CONST. art. 1, § 24. The trial court stated, in pertinent part:

> The Indiana Court of Appeals held, in *Wencke v. City of Indianapolis,* that discharging a police officer based on a mandatory retirement age that is inconsistent with the contractual relationship violates the contract clauses of the Indiana and United States Constitutions. 429 N.E.2d 295, 297–98 (Ind.Ct.App. 1981).

> It is undisputed that Plaintiffs were permitted to work past their sixty-fifth birthdays, and that two other officers, Franklin and Hamilton, were also permitted to work past their sixty-fifth birthdays. Additionally, Plaintiffs have produced evidence in the form of a retirement list, prepared and accepted by the City of Gary and the Gary Police Department,[4] which supports a finding that the City of Gary agreed to a specific retirement date after their sixty-fifth birthday for each of the Plaintiffs.

Appellants' App. at 146.

We disagree with the trial court's application of *Wencke.* Wencke was hired by the Indianapolis Police Department in 1946. At that time, the mandatory retirement age of Indianapolis police officers was seventy years. In 1975, the legislature lowered the mandatory retirement age to sixty-five. Wencke was notified by the City of Indianapolis that he would be deemed officially retired effective upon his sixty-fifth birthday. Wencke argued that the application of the revised retirement age impermissibly impaired the City's contractual obligation to him. He contended that the retirement statute that was in effect at the time he was appointed to the department should govern. Another panel of this Court concluded that "[a] retrospective application of a statute to a contract entered into before the effective date of that statute can impair contractual obligations contrary to both the United States and Indiana Constitutions." *Wencke,* 429 N.E.2d at 298.

■ Our holding in *Wencke* is inapposite to the instant case. *Wencke* specifically addressed the effect of statutory changes on an employment contract. Here, the mandatory retirement age did not change; rather, the City simply failed to enforce the retirement age in a limited number of cases.[5] The evidence suggests that the City's failure to retire Appellees on their sixty-fifth birthdays resulted from an oversight rather than from any purposeful intention to modify their employment contracts. Further, even if the parties had mutually agreed to a contract modification, as Appellees contend, such modification would be contrary to Ordi-

---

**4.** We disagree with the trial court's finding that the Retirement List was prepared and accepted by the City and/or the Gary Police Department. As discussed further below, there is no clear evidence as to who prepared the Retirement List and for what purpose.

**5.** Chief Watson explained that when he learned that Officer Franklin had worked be- yond his sixty-fifth birthday, Franklin had already retired. He did not force Officer Hamilton to retire because the trial court had issued a TRO with regard to Appellees' continued employment beyond age sixty-five, and Chief Watson intended to avoid violating "the spirit of [the trial court's] order." Appellants' App. at 71.

nance 5881 and thus void and unenforceable. *See Sinn v. State,* 609 N.E.2d 434, 436 (Ind.Ct.App.1993), *trans. denied.* Therefore, we conclude that Appellees failed to demonstrate a reasonable likelihood of success on their contract clause claim.

Second, Appellees argued, and the trial court agreed, that Appellees showed a reasonable likelihood of success with regard to their due process claim. The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law.[6] To have a constitutionally protected property interest in a benefit, such as a job, a person must have more than an abstract need, desire, or unilateral expectation of it; instead, he must have a legitimate claim of entitlement to it. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A protected property interest entitling the owner to due process generally arises from a statute, ordinance, or contract. *Charnas v. Estate of Loizos,* 822 N.E.2d 181, 185 (Ind.Ct.App.2005).

The trial court stated that "it is clear from *Wencke* ... that Plaintiffs have a protected property interest in their jobs sufficient to trigger application of the due process clauses." Appellants' App. at 147. We disagree. *Wencke* does not even address the issues of due process or property interest. Also, the only evidence presented by Appellees that suggests that the City modified their employment contracts was the Retirement List, the origin of which is unknown. As discussed above, even if the parties had intended to modify the contract to include employment beyond age sixty-five, such modification would be void and unenforceable because it violated Ordinance 5881. Thus, each Appellee merely had a unilateral expectation of employment beyond his sixty-fifth birthday, and none of them had a legitimate claim of entitlement to their jobs after they reached the mandatory retirement age under Ordinance 5881 and the state statute that was in effect at the time they were hired.

Third, the trial court found that Appellees demonstrated a reasonable likelihood of success on their equitable estoppel claim. As a general rule, estoppel will not be applied against governmental authorities. *Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n,* 819 N.E.2d 55, 67 (Ind.2004). Our courts have been reluctant to allow an estoppel in those cases where the party claiming to have been ignorant of the facts had access to the correct information. *Cablevision of Chicago v. Colby Cable Corp.,* 417 N.E.2d 348, 355 (Ind.Ct.App.1981). Estoppel may be appropriate, however, where a person has detrimentally relied on a governmental entity's affirmative assertion or on its silence where there was a duty to speak. *Equicor Dev. v. Westfield–Washington Twp.,* 758 N.E.2d 34, 39 (Ind.2001). Appellees claim that the City affirmatively accepted their DROP retirement dates by publishing the "Retirement List as of 3/9/04 for the Gary Police Department." Appellants' App. at 139. However, Karen Lynn Erickson, a trustee and secretary of the Department's pension board, testified that she did not prepare the document and did not know whether it was prepared by a Department employee or by the officers

---

**6.** Our supreme court has stated that it employs the same methodology when analyzing an alleged claim of denial of procedural due process under the due course of law clause of Article 1, Section 12 of the Indiana Constitution, as the United States Supreme Court has used to analyze claimed violations of the U.S. Constitution's due process clause. *McIntosh v. Melroe Co.,* 729 N.E.2d 972, 976 (Ind.2000).

themselves. As part of each Appellee's application for participation in DROP, he selected a DROP retirement date beyond his sixty-fifth birthday, and it was these dates that were placed on the list. The Appellees did not request approval from Chief Watson or any other Department official to remain employed beyond their mandatory retirement age of sixty-five.

Indiana Code Section 19–1–21–13 was in effect when Appellees joined the Department. It stated that each member of a "second-class city" police department must retire on his sixty-fifth birthday. Indiana Code Chapter 36–8–3.5—which replaced many former merit system statutes, including Indiana Code Chapter 19–1–21—explains that if a city had a police merit system under Indiana Code Chapter 19–1–21, "it may retain that system by ordinance of the city legislative body passed before January 1, 1983." Ind.Code § 36–8–3.5–1(b). In December 1982, the City adopted Ordinance 5881, which retained the merit system set forth in Indiana Code Chapter 19–1–21, including the provision that each member of the Department must retire upon reaching age sixty-five. Further, the DROP statutes require that each DROP participant must exit the program on his applicable mandatory retirement age. Ind.Code § 36–8–8.5–10(3). In sum, this longstanding limitation could not be circumvented by the creation of the Retirement List. Therefore, Appellees' estoppel argument must fail.

■■■ Finally, Appellees claim that their equal protection rights were violated because they were treated differently than Officers Franklin and Hamilton, who were permitted to retire after their sixty-fifth birthdays. Chief Watson testified that Officer Franklin had already retired when it was brought to his attention that Franklin

had worked beyond age sixty-five in violation of the law. He testified that Officer Hamilton was permitted to work until his DROP retirement date because a TRO had been issued with regard to Appellees and he intended to honor the spirit of that order by permitting Officer Hamilton to continue working beyond age sixty-five as well. There is no denial of equal protection where, as here, the City's inaction was "founded in a mere laxity to administer the law and not in an intentional scheme to discriminate against a certain protected class of persons." *Owens v. State ex rel. VanNatta,* 178 Ind.App. 406, 412, 382 N.E.2d 1312, 1316 (1978).

In sum, we conclude that Appellees failed to establish a reasonable likelihood of success on each of their claims and that the trial court therefore abused its discretion by granting Appellees' request for preliminary injunction.

### III.  Mootness

■■■ In their brief filed on August 15, 2005, Appellees Mitchell and Perunko argued that the appeal should be dismissed as to each of them for mootness.[7] "An appeal is moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties." *Lake County Sheriff's Corr. Merit Bd. v. Peron,* 756 N.E.2d 1025, 1027 (Ind. Ct.App.2001) (citation omitted). Mitchell and Perunko claimed that because their DROP retirement dates had passed—Mitchell's on May 6, 2005 and Perunko's on August 1, 2005—the appeal should be dismissed as to them. At that time, Mosby's DROP retirement date—January 5, 2006—had not yet been reached. As of today, however, Mosby's DROP retirement date has also come and gone.

---

7. On August 15, 2005, Mitchell and Perunko filed, along with their appellate brief, a motion to dismiss this appeal as to them on the grounds of mootness. On October 5, 2005, another panel of this Court denied the motion.

Under the protection of the trial court's preliminary injunction order, all three Appellees were permitted to remain employed by the Department through their respective DROP retirement dates. Because we have determined that injunctive relief was improper, issues may remain before the trial court as to the propriety of Appellees' participation in the DROP program and their entitlement to DROP benefits. Therefore, all of the Appellees continue to share a legally cognizable interest in the outcome of this case, and Mitchell and Perunko's mootness claim fails.

Reversed.

FRIEDLANDER, J., and MAY, J., concur.