IN THE MATTER OF: A.M.3, A Child In Need Of Services,
KENNIETRA MACK, Appellant-Respondent,
v.
MARION COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee-Petitioner, and
CHILD ADVOCATES, INC., Co-Appellee-Guardian Ad Litem.
No. 49A02-0605-JV-371
Court of Appeals of Indiana.
December 22, 2006
PATRICIA CARESS McMATH, Indianapolis, Indiana, ATTORNEY FOR APPELLANT.
Attorney for Marion Cty. Office of Family and Children: BARRY A. CHAMBERS, Indianapolis, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM DECISION
MAY, Judge.
Kennietra Mack appeals the determination her daughter, A.M.3,[1] is a child in need of services ("CHINS"). She asserts the court abused its discretion by admitting evidence from the CHINS and termination proceedings regarding her other two children and the evidence was insufficient to demonstrate A.M.3 is a CHINS. Because the evidence regarding Mack's other two children is relevant to Mack's ability to care for A.M.3, the court did not abuse its discretion in admitting those documents. The evidence supports finding A.M.3 is a CHINS. Accordingly, we affirm.

FACTS AND PROCEDURAL HISTORY
On December 8, 2005, Mack gave birth to A.M.3. The Marion County Department of Child Services ("the DCS") took custody of A.M.3 on or about January 19, 2006. On January 23, the DCS filed a petition alleging A.M.3 was a CHINS because
her mother and sole legal custodian, Kennietra Mack, has two other children that are currently wards of the State. Ms. Mack has not been compliant with treatment and services offered through DCS in her CHINS or Termination cases. In addition, Ms. Mack has failed and missed multiple random drug screens. Due to Ms. Mack's failure to comply with services offered through DCS, the child is endangered in her care.
(App. at 16.)[2] Mack contested the allegation; however, after a hearing, the court found A.M.3 was a CHINS.

DISCUSSION AND DECISION
The Fourteenth Amendment to the United States Constitution gives parents a right to establish a home and raise their children. In re D.G., 702 N.E.2d 777, 780 (Ind. Ct. App. 1998). However, a parent's right to her children is balanced against the State's limited authority to interfere for the protection of the children. Id.

1. Admission of Evidence
Mack first asserts the court abused its discretion by admitting evidence from the court proceedings regarding her other children. A trial court has discretion to admit or exclude evidence, and we reverse only for an abuse of that discretion. In re A.H., 832 N.E.2d 563, 567 (Ind. Ct. App. 2005). An abuse of discretion has occurred if the decision is against the logic and effect of the facts and circumstances before the court. Id.
The State moved to admit two exhibits containing "certified Court records from previous cases." (Tr. at 30.) Mack objected:
Your Honor I'll make just a relevance objection Your Honor. It looks like they pertain to two other children of Ms. Mack's, [sic] and also... That's the only objection, a relevance objection. And they're full of hearsay Your Honor.
(Id.) (ellipsis in original). The State's response was that the "previous child abuse and neglect cases are definitely relevant to the case." (Id.) The court decided "it is relevant. The whole point of the CHINS petition is the previous case. So I'm going to show petitioner's A and B admitted over objection." (Id. at 31.)
Mack's relevance objection fails.[3] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. As a general rule, "relevant evidence is admissible," while "[e]vidence which is not relevant is not admissible." Evid. R. 402. Evidence may be excluded, even though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.
Mack asserts the evidence from the CHINS and termination proceedings regarding her other two children are irrelevant in this CHINS proceeding regarding A.M.3 because "it is not at all relevant why [Mack's] other children were determined CHINS or why her rights to [AM1] were terminated." (Appellant's Br. at 4.) We cannot agree. If a parent has a history of neglecting to provide appropriate care for other children and of failing to complete services that would demonstrate she has become capable of providing appropriate care for children, such evidence might be highly relevant for determining whether another child now in her care is in need of services or, in other words, in danger of being abused or neglected. The trial court did not abuse its discretion in finding the State's Exhibits contained relevant information.[4]

2. Sufficiency of Evidence
When a parent appeals a court's determination that a child is in need of services, we must determine whether the evidence supports the findings and whether the findings support the judgment. In re K.B., 793 N.E.2d 1191, 1200 (Ind. Ct. App. 2003). We may reverse the judgment if it is unsupported by the findings and conclusions. Id. Findings of fact are clearly erroneous if there is no substantial evidence of probative value in the record to support the findings. In re A.H., 751 N.E.2d 690, 695 (Ind. Ct. App. 2001), trans. denied sub nom. Halberstadt v. Bartholomew County Office of Family & Children, 761 N.E.2d 417 (Ind. 2001). When reviewing the findings, we neither reweigh the evidence nor reassess the credibility of the witnesses, and we may consider only the evidence, and inferences therefrom, favorable to the judgment. Id.
The DCS alleged A.M.3 was a CHINS because Mack had not complied with the services required pursuant to the DCS's proceedings involving her other two children. The DCS was required to prove this allegation by a preponderance of the evidence. In re A.H., 751 N.E.2d at 695. DCS family case manager Shanise Abrams testified:
Q And were you assigned to the case of [A.M.3]?
A Yes[.]
Q Were you also the ongoing case manager for the child's two other siblings?
A Yes I am.
Q And what are their names?
A We have [AM1] and we have [AM2][.]
Q What are their approximate ages?
A [AM1] should be four going on five, and [AM2] is two, a little bit over two almost three.
Q And is [Mack] still um, legally considered the mother of both of the children?
A No, she is considered the legal mother of [AM2] only, her rights have been terminated for [AM1].
Q As part of Mothers [sic] cases what services was she required to complete?
A Upon me receiving the case, [Mack] had been ordered to comply with several services which consisted of drug screens, parenting classes, homebase [sic] counseling, and that was given to her twice.
That service was offered to her twice. Upon me coming on to the case, I in turn informed her that she would need to do, uh, continue with drug screens, um and to also start parenting classes. A psyche [sic] eval. was also ordered in the past by a previous case manager and me for Ms. Mack.
Q Okay, um at the time that this petition was filed had mom completed her drug screens for her previous cases?
A No, there were several months laps [sic] of Ms. Mack not complying with the services for her drug screens, and at the time of the termination trial for [AM1] she stated that she just didn't know why she wasn't complying with the services.
Q Mom said that she didn't know why she wasn't?
A Yes[.]
Q Did mom complete her parenting classes?
A She did successfully complete her parenting classes.
Q And when was that?
A That was back in 2002.
Q Okay, that was for [AM1]?
A At that time it was for [AM1].
Q Has she been asked to do it again since for the other case?
A Um, she hasn't asked, but I did do the referral for her and did explain to Ms. Mack that she would need to comply and do the services for her parenting classes considering that there was a significant amount of time that had elapsed between her having [AM1] and [AM2], and having [A.M.3].
Q Okay, and did mom successfully complete homebase [sic] counseling?
A No she did not.
Q Okay, [sic]
A Either time.
Q Two referrals were made?
A Yes, she went through two different services for homebase [sic] counseling and failed to successfully complete both sessions.
Q What is the status of [AM2]'s case?
A At this point [AM2]'s case is in the termination phase. We were in Court yesterday, April 19th for a Placement and Jurisdiction. At that time a facilitation date was given. No trial date has been given at this time.
Q Is mother having visitation with this child?
A No she's not.
Q And why is that?
A It was ordered by Judge Piazza that she currently does not have any visitation until a letter of recommendation or not recommending from the therapist that [AM2] is seeing at the current time. Due to the fact that both children, [AM1] and [AM2] are placed in the same foster home, that has been their one and only foster home, together for a number of years. And we felt that it was not in the best interest to allow [AM2] to have visitation and [AM1] not understand why she's not able to have visitation.
Q Can you explain why you believe [A.M.3] to be in danger due to Mother's past history with [AM2] and [AM1]?
A Mom has not had a very good record as far as complying with services. It has been documented on several occasions that Mom's inability, and her mental status, her comprehension could put the children at risk, and Ms. Mack is just not complying with services.
Q Has Mother completed the psychiatric evaluation?
A No, that was referred to (inaudible) January the 19th of 2006, and as to this day she has not complied. I have informed her on several different occasions. One form of communication by me was verbal, the other was by letter that was sent to her mother's address, and she signed for the certified letters telling her of the services that she needs to comply with. And to this day she still has not complied.
(Tr. at 43-46.)
Mack asserts the evidence was insufficient because there was no evidence A.M.3 "had been neglected or that she had suffered any harm whatsoever." (Br. of Appellant at 5.) However, Abrams' testimony demonstrates Mack did not have, and did not complete services that would have helped her obtain, the emotional, mental, or financial resources necessary to care for a child appropriately. Therefore, the evidence demonstrated by a preponderance of the evidence that A.M.3 is at risk to be neglected if left in Mack's care, and we affirm.
Affirmed.
BAILEY, J., concurs.
RILEY, J., dissents with separate opinion.
RILEY, Judge, dissenting.
I respectfully dissent.
The trial court's finding that A.M.3 is a child in need of services under Ind. Code Sec. 31-34-1-1 is not supported by the evidence. The allegations are that A.M.3 is a CHINS because Mack has two other children who were wards of the State. The evidence presented showed that she had not complied with the court ordered services as to her older children.
However, to sustain the burden of proof in this case, the State was required to present evidence that Mack was endangering A.M.3 by not providing for her needs. There is no evidence in the record that A.M.3 had been neglected or that she suffered any harm.
It is not for the courts to assume evidence of neglect of a child born after a sibling has been deemed to be a CHINS without any further evidence in the record. In fact, there is evidence in the record that Mack's drug screens had been negative after A.M.3 was born. We must not be too quick to assume that a parent will neglect one child because she did not comply with services being offered to better parent the children born before. Without independent evidence that Mack was not taking care of A.M.3, I must dissent.
NOTES
[1] Mack has had three children. All of them had Mack's last name and a first name that begins with the letter "A". Thus, this daughter is the third "A.M." and is referred to on some documents as A.M.3.
[2] The petition also alleged A.M.3 was a CHINS because her alleged father, Jared Antonio Long, was incarcerated and thus unable or unwilling to care for A.M.3. Long was released from prison during these proceedings, genetic tests confirmed his paternity, and he challenged the CHIINS petition as to himself. The court determined A.M.3 was a CHINS as pertains to Long, and apparently Long has not appealed that determination.
[3] On appeal Mack asserts she objected on both relevance and hearsay grounds. The State asserts Mack waived any hearsay objection by saying at trial the relevance objection was "the only objection." (Tr. at 30.) Mack's trial objection, while mentioning hearsay, did not clearly assert a hearsay objection. Nor, when the court ruled on only the relevance objection, did Mack ask for a ruling on her alleged hearsay objection. Thus, we agree that any such objection was waived for appeal. See Ind. Evidence Rule 103(a)(1) ("Error may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection or motion to strike appears of record, stating the specific ground of objection . . . ."). Moreover, because the damaging parts of those documents were cumulative of the testimony of DCS Case Manager Shanise Abrams, see Issue 2, any error was harmless. See In re Adoption of M.A.S., 815 N.E.2d 216, 223 (Ind. Ct. App. 2004) (admission of reports harmless where "much of the information in the report was also introduced into evidence through the testimony of witnesses").
[4] We also note Mack waived this relevance argument on appeal by failing to object when Abrams testified regarding the information contained in those documents. See Ind. Appellate Rule 66(A) (This "Harmless Error" rule provides we shall not reverse on appeal if an error's "probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").